No. 13-35688

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Montana Environmental Information Center; Earthworks' Oil and Gas Accountability Project; and WildEarth Guardians,

Plaintiffs-Appellants

-v.-

United States Bureau of Land Management; Sally Jewell; Jamie Connell; and Theresa M. Hanley,

Defendants-Appellees

American Petroleum Institute; Montana Petroleum Institute; Montana Chamber of Commerce; and Western Energy Alliance,

Intervenor Defendants-Appellees

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA (HON. SAM E. HADDEN)

---

**FEDERAL DEFENDANTS-APPELLEES' ANSWERING BRIEF**

---

SAM HIRSCH
Acting Assistant Attorney
General

Of Counsel:
KARAN L. DUNNIGAN
Field Solicitor
Office of the Solicitor
U.S. Dep't of the Interior

NICHOLAS A. DIMASCIO
DAVID C. SHILTON
  Attorneys, U.S. Dep't of Justice
  Env't & Natural Resources Div.
  P.O. Box 7415
  Washington, DC  20044
  (202) 514-5580
  david.shilton@usdoj.gov

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUE ................................................................. 1

STATEMENT OF THE CASE ................................................................. 1

STATUTORY BACKGROUND ................................................................. 2

    I.    BLM's OIL AND GAS LEASING PROCESS ..................................... 2

    II.    NEPA .................................................................................. 4

STATEMENT OF FACTS ....................................................................... 5

    I.    BLM's DECISIONS TO ISSUE OIL AND GAS LEASES IN
           MONTANA ............................................................................. 5

    II.    PROCEDURAL HISTORY ........................................................... 8

STANDARD OF REVIEW ..................................................................... 10

SUMMARY OF ARGUMENT ................................................................. 11

ARGUMENT .................................................................................... 12

    A.    The district court should have considered whether the
          surface impacts of BLM's leasing decisions could support
          standing ............................................................................ 12

    B.    The district court should carry out the surface-impact injury
          inquiry in the first instance ................................................... 16

    C.    On remand, the district court should also consider the extent
          to which the case may be moot ............................................. 21

i

CONCLUSION ........................................................................... 25

STATEMENT OF RELATED CASES ..................................................... 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*Allen v. Wright,*
      468 U.S. 737 (1984) ........................................................................ 18

*Arizonans for Official English v. Arizona,*
      520 U.S. 43 (1997) .......................................................................... 22

*Cantrell v. City of Long Beach,*
      241 F.3d 674 (9th Cir. 2001) ........................................................ 18

*Cone Corp. v. Hillsborough County,*
      5 F.3d 1397 (11th Cir. 1993) ........................................................ 17

D*aimler Chrysler Corp. v. Cuno,*
      547 U.S. 332 (2006) ........................................................................ 16

*Douglas County v. Babbitt,*
      48 F.3d 1495 (9th Cir. 1995) ........................................................ 18

*Earth Island Inst. v. U.S. Forest Serv.,*
      697 F.3d 1010 (9th Cir. 2012) ........................................................ 4

*Gator.com Corp. v. L.L. Bean, Inc.,*
      398 F.3d 1125 (9th Cir. 2005) (en banc) ...................................... 21

*Immigration Assistance Project v. INS,*
      306 F.3d 842 (9th Cir. 2002) ........................................................ 16

*Lewis v. Casey,*
      518 U.S. 343 (1996) ........................................................................ 19

*Lujan v. Defenders of Wildlife,*
      504 U.S. 555 (1992) ........................................................................ 18

*Lujan v. Nat'l Wildlife Fed'n,*
      497 U.S. 871 (1990) ........................................................................ 19

*Native Ecosystems Council v. U.S. Forest Serv.*,
     428 F.3d 1233 (9th Cir. 2005) ........................................................ 19

*Native Ecosystems Council v. Weldon*,
     697 F.3d 1043 (9th Cir. 2012) .......................................................... 5

*Neighbors of Cuddy Mountain v. Alexander*,
     303 F.3d 1059 (9th Cir. 2002) .......................................................... 4

*Oregon Natural Resources Council, Inc. v. Grossarth*,
     979 F.2d 1377 (9th Cir. 1992) ........................................................ 21

*Parks v. Watson*,
     716 F.2d 646 (9th Cir. 1983) .......................................................... 17

*Seven Words LLC v. Network Solutions*,
     260 F.3d 1089 (9th Cir. 2001) ........................................................ 22

*Sierra Club v. Morton*,
     405 U.S. 727 (1972) ...................................................................... 16

*Summers v. Earth Island Inst.*,
     555 U.S. 488 (2009) ..................................................... 18, 20, 24

*Townley v. Miller*,
     722 F.3d 1128 (9th Cir. 2013) ........................................................ 10

*Tri-Valley CAREs v. U.S. Dept. of Energy*,
     671 F.3d 1113 (9th Cir. 2012) .......................................................... 5

*United States v. Houser*,
     804 F.2d 565 (9th Cir.1986) .......................................................... 17

*Washington Environmental Council v. Bellon*,
     732 F.3d 1131 (9th Cir. 2013) ........................................................ 13

*WildEarth Guardians v. Jewell*,
    738 F.3d 298 (D.C. Cir. 2013) ........................ 11, 14, 15, 16

*WildEarth Guardians v. Salazar*,
    880 F. Supp. 2d 77 (D.D.C. 2012) .................................. 14

**STATUTES:**

Administrative Procedure Act
    5 U.S.C. § 704 ............................................................. 19
    5 U.S.C. § 706(2)(A) ................................................... 19

Mineral Leasing Act
    30 U.S.C. § 221-237 ...................................................... 2
    30 U.S.C. § 226(a) ......................................................... 3
    30 U.S.C. § 226(g) ......................................................... 3

National Environmental Policy Act
    42 U.S.C. § 4332(2)(C) .................................................. 4

28 U.S.C. § 1291 ................................................................ 1

28 U.S.C. § 1331 ................................................................ 1

43 U.S.C. § 1712 ................................................................ 3

**RULES and REGULATIONS:**

40 C.F.R. § 1508.9 ............................................................. 4

40 C.F.R. § 1501.4(e) ..................................................... 5, 6

40 C.F.R. § 1508.13 ........................................................... 5

43 C.F.R. § 1610.1 to .7 ...................................................... 3

43 C.F.R. § 3103.2-2 .................................................... 21, 22

43 C.F.R. § 3120.1-2 ................................................................. 3

43 C.F.R. § 3120.1-.7 ................................................................ 3

43 C.F.R. § 3120.4 -.5 ............................................................ 3, 4

43 C.F.R. § 3120.6 ................................................................ 3, 21

43 C.F.R. § 3162.3-1(c)-(i) ........................................................ 3

43 C.F.R. § 3120.1-1(e) ............................................................ 3

Fed. R. App. P. 4(a)(1)(B) ........................................................ 1

## GLOSSARY

APA    Administrative Procedure Act

BLM    U.S. Bureau of Land Management

EA    Environmental Assessment

ER    Appellants' Excerpts of Record

FASER    Federal Appellees' Supplemental Excerpts of Record

FONSI    Finding of No Significant Impact

NEPA    National Environmental Policy Act

SER    Intervenors' Supplemental Excerpts of Record

# JURISDICTIONAL STATEMENT

Montana Environmental Information Center and the other Plaintiffs-Appellants, collectively referred to as "the Center" in this brief, invoked the district court's original jurisdiction under 28 U.S.C. § 1331.  The district court entered final judgment in favor of Federal Defendants-Appellees Bureau of Land Management, et al., collectively referred to as "BLM" in this brief, on June 14, 2013.  ER 24.  The Center filed a timely notice of appeal under Fed. R. App. P. 4(a)(1)(B) on August 1, 2013.  ER 29.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUE

Whether the Center's challenges to decisions by six BLM field offices in Montana to lift suspensions on certain oil-and-gas leases, and to offer new parcels for lease, are justiciable under Article III of the U.S. Constitution.

# STATEMENT OF THE CASE

The Center brought this challenge to decisions rendered by six BLM field offices in Montana, which together lifted or partially lifted suspensions on 47 oil-and-gas leases and offered 119 new parcels for

lease in that State.  The Center's challenges focused on BLM's environmental analysis found in detailed Environmental Assessments prepared pursuant to the National Environmental Policy Act ("NEPA"). The Center in particular challenged BLM's alleged failure to consider as discrete alternatives the imposition of stipulations requiring controls on the emission of methane, which the Center urged was warranted to reduce emissions of greenhouse gases that contribute to global warming.  Without reaching the merits of the NEPA claims, the district court found that the Center could not establish Article III standing based on allegations of injury from global warming, and dismissed for lack of jurisdiction.

## STATUTORY BACKGROUND

### I.    BLM'S OIL AND GAS LEASING PROCESS

The Mineral Leasing Act, as amended by the Federal Onshore Oil and Gas Leasing Reform Act of 1987, regulates the development of oil-and-gas deposits on federally owned lands.  *See* 30 U.S.C. § 221–237. The Act assigns to the Secretary of the Interior the authority to decide which parcels of land "known or believed to contain oil or gas deposits may be leased."  *Id.* § 226(a).  The Secretary exercises her authority over oil-and-gas leases through a three-phase decision-making process.

First, BLM prepares a Resource Management Plan identifying general geographical areas that may be appropriate for oil-and-gas leases. *See* 43 U.S.C. § 1712; 43 C.F.R. § 1610.1 to .7. Second, BLM decides which specific parcels to offer for lease in a competitive lease sale. *See* 43 C.F.R. § 3120.1 to .7. Third, the purchaser of a lease seeks permission from BLM to drill a well by filing an application for permit to drill. 30 U.S.C. § 226(g); 43 C.F.R. § 3162.3-1(c) to (i).

This case primarily concerns the second phase, where BLM decides which parcels to offer for lease. BLM must hold lease sales quarterly if there are lands eligible for leasing. 43 C.F.R. § 3120.1-2. Typically, oil-and-gas companies file "expressions of intent" to nominate parcels for leasing. *See* 43 C.F.R. §§ 3120.1-1(e), 3120.3-1. BLM field offices then review the nominated parcels to confirm whether the applicable Resource Management Plan permits oil-and-gas leasing in the area, to identify any special resource conditions in the area, and to determine whether further environmental analysis under NEPA is required before offering the leases for sale. ER 55. BLM then selects the parcels to be offered in a competitive lease sale. 43 C.F.R. § 3120.4

to .5.  Any parcels that receive no bids at a competitive lease sale

remain available for noncompetitive bids for two years.  *Id.* § 3120.6.

## II.   NEPA

"NEPA is a purely procedural statute."  *Neighbors of Cuddy*

*Mountain v. Alexander*, 303 F.3d 1059, 1070 (9th Cir. 2002).  NEPA

ensures that federal agencies examine and publicly disclose the

potential environmental impacts of their actions.  *Earth Island Inst. v.*

*U.S. Forest Serv.*, 697 F.3d 1010, 1019 (9th Cir. 2012).  NEPA does not,

however, dictate particular results or require that agencies elevate

environmental impacts over other concerns.  Rather, NEPA provides a

process to ensure that agencies take a "hard look" at the environmental

consequences of their actions.  *Cuddy Mountain*, 303 F.3d at 1070.

Before an agency undertakes any major federal action

"significantly affecting" the environment, it must first prepare an

environmental impact statement, or EIS.  42 U.S.C. § 4332(2)(C).  To

decide whether an EIS is necessary, an agency may first prepare a

"concise public document" called an environmental assessment, or EA.

40 C.F.R. § 1508.9.  "The purpose of the EA is simply to create a

workable public document that briefly provides evidence and analysis

for an agency's finding regarding an environmental impact." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1053 (9th Cir. 2012) (quoting *Tri-Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113, 1129 (9th Cir. 2012)).  If, pursuant to an EA, an agency determines that the proposed action will not significantly affect the environment, the agency may issue a Finding of No Significant Impact, or FONSI, in lieu of preparing an EIS. 40 C.F.R. §§ 1501.4(e), 1508.13.

## STATEMENT OF FACTS

## I.    BLM'S DECISIONS TO ISSUE OIL AND GAS LEASES IN MONTANA

In 2008, BLM sold 61 oil-and-gas leases in various locations in Montana.  The Center challenged BLM's lease decisions, and BLM agreed in a settlement to suspend the leases and perform additional environmental analysis under NEPA.  ER 7.  Six BLM field offices (Billings, Butte, Dillon, Lewistown, Malta, and Miles City) prepared separate EAs analyzing the potential environmental impacts of the suspended leases and, in some cases, considering whether to offer additional parcels for lease in their respective jurisdictions.  *Id.*  Each EA gave detailed consideration to two alternatives: a "no action" alternative and BLM's "preferred alternative," which contemplated

executing the leases subject to various protective stipulations.  ER 58-59.[1]

While BLM did not propose a formal alternative that included specific stipulations on leases directed at reducing greenhouse gas emissions, the EAs did examine available technologies for reducing such emissions.  ER 106-09.  BLM concluded that greenhouse gas emissions could be managed more effectively by imposing conditions during the permitting phase, should any lessee file an application for a permit to drill.  *Id.*

The EAs incorporated by reference a substantial "Climate Change Supplementary Information Report for Montana, North Dakota and South Dakota" that BLM had commissioned to study the issue of climate change, particularly in relation to future oil and gas development in those states.  ER 65-68.  This report included detailed greenhouse gas emissions inventories as part of its analysis of potential future oil and gas development.  SER 313-482.

---

[1]  The Center has included the EA for the Miles City Field Office Decision in its ER at 48-198.  BLM agrees that this EA is generally representative of the EAs prepared for the other decisions.

In December 2010, BLM issued decision records concerning the suspended leases, which are reproduced in the Federal Appellees' Supplemental Excerpts of Record ("FASER") at 1–4 (Billings), 27-29 (Butte), 53-56 (Dillon), 82-84 (Lewistown), 94-97 (Malta), and 105-107 (Miles City).[2]  In each decision record, BLM decided whether to maintain or lift the suspensions on the leases issued in 2008.  In total, BLM lifted the suspensions on 45 of the leases and partially lifted the suspensions on two leases.  Additionally, three of the BLM field offices decided to offer new parcels for lease.  FASER 30, 34-37 (Butte), 85, 89 (Lewistown), 108, 112-151 (Miles City).  In total, BLM decided to offer 119 new parcels for lease in Montana. The following table summarizes BLM's decisions by field office:

|  | Suspensions Lifted | New Parcels Offered |
|---|---|---|
| Billings | 11 | 0 |
| Butte | 4 | 33 |
| Dillon | 7 | 0 |
| Lewistown | 0 | 4 |
| Malta | 2 | 0 |
| Miles City | 23 | 82 |

---

[2]  For each decision, we have included in the Federal Appellees' Supplemental Excerpts of Record a decision record, Finding of No Significant Impact, and Appendix A to the pertinent EA, which includes a description of each lease parcel and the lease stipulations by parcel.

| Total | 47 | 119 |

BLM concluded that these actions would have no significant impact on the human environment. Accordingly, BLM did not prepare an EIS but instead issued final EAs along with Findings of No Significant Impacts ("FONSIs"). *See, e.g.,* ER 48-198 (Miles City EA); FASER 108-111 (Miles City FONSI). In December, 2010, BLM held a lease sale for parcels in Montana, North Dakota and South Dakota. ER 8-9. At the sale, BLM 53 Montana leases were sold competitively. *Id.* An additional 25 leases were sold non-competitively after the sale.

## II.    PROCEDURAL HISTORY

The Center filed suit in district court challenging "BLM's decision to lift the suspension entirely on 45 leases and in part on 2 leases" and to offer the additional 119 parcels in Montana for lease. ER 304, 334–35. The district court granted a motion to intervene filed by the American Petroleum Institute, et al. ER 431.

The Center's complaint contended that each of the EAs issued by the BLM field offices violated NEPA because BLM allegedly refused to consider the alternative of attaching stipulations to the leases that would prevent or reduce greenhouse gas emissions. The Center also

8

asserted that BLM had to prepare an EIS because (1) there is scientific uncertainty over the long-term and short-term impacts of methane emissions from the lease parcels, and (2) the cumulative impacts of surface-based development activities along with the expected effects of climate change on the lease parcels will be significant. ER 336-41. The Center requested the district court to "[s]et aside BLM's actions" and "[v]oid or, alternatively, suspend and enjoin the oil and gas leases and further lease sales by BLM in Montana pending full compliance with NEPA, and NEPA's regulations and policies." ER 341.

The parties filed motions for summary judgment. The Center filed standing declarations from several individuals who belong to the plaintiff organizations. ER 351-424. To demonstrate Article III standing, these declarations asserted that BLM's decisions caused injury because the leases would contribute to climate change. *See, e.g.* ER 352-53, 355-59 (Gilbert); 362-71 (Sikorski); 389-94 (Wuerthner); 396-402, 406-413 (Nichols); FASER 152-58 (Jensen). Two of the declarants also alleged that on-the-ground impacts from oil-and-gas development would cause injury by impairing their ability to

photograph and engage in other recreational pursuits near some of the lease parcels. ER 354-56 (Gilbert); 384–88 (Wuerthner).

Ruling on the motions for summary judgment, the district court held that the Center lacked Article III standing because it had not demonstrated that BLM's decisions "will lead to climate change impacts resulting in injury to their recreational and aesthetic interests in lands near the leases." ER 21. The district court did not address the Center's alleged injuries from the on-the-ground impacts of oil-and-gas development because "all of [the Center's] claims are based upon climate change impacts," not "surface disturbance or on-the-ground activities associated with oil and gas development that are wholly independent of alleged climate change impacts." ER 10–11 n.19. The district court subsequently denied a motion to supplement the administrative record filed by the Center as moot (ER 437) and entered judgment against the Center without reaching the merits (ER 23–24).

## STANDARD OF REVIEW

This Court reviews de novo questions of Article III justiciability. *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013).

## SUMMARY OF ARGUMENT

The district court correctly rejected the Center's attempts to demonstrate Article III standing based on injuries from global climate change. However, the court did not consider whether alleged surface impacts of oil-and-gas leases could, at the summary judgment stage, suffice to demonstrate particularized injury to members of the plaintiff organizations for purposes of standing. The district court's conclusion that surface impacts were insufficient to provide the Center with standing was based in part on a district court decision that was, after judgment, reversed by the D.C. Circuit. *See WildEarth Guardians v. Jewell,* 738 F.3d 298 (D.C. Cir. 2013). The D.C. Circuit determined that the type of environmental impact causing a plaintiff's injury for purposes of standing does not have to be the same type of impact as that which provides the basis of the plaintiff's merits challenge to the agency's NEPA compliance.

BLM believes that the ruling in *WildEarth Guardians* is correct, and that applying it here requires a remand for further findings. While the Center can base standing on impacts unrelated to greenhouse gases and global warming, it must do so in a way that meets the relevant

11

standing tests.  The Center's allegations regarding alleged surface impacts of oil-and-gas leases raise a number of factual questions that should be addressed in the first instance by the district court.  While the Center's declarations indicate that some members recreate in the general vicinity of leases that were purchased, it remains unclear whether these declarants are likely to suffer concrete injury from BLM's decision to lease these parcels.

Moreover, a number of the leases that are alleged to injure the declarants' interests have been cancelled or terminated, and thus can pose no threat of continuing injury.  The mootness issue raised by these cancellations and terminations, as well as the standing issues, pose intensively factual questions that should be considered by the district court in the first instance.

## ARGUMENT

### A.    The district court should have considered whether the surface impacts of BLM's leasing decisions could support standing.

The district court correctly held that the Center failed to demonstrate Article III standing based on allegations that BLM's decisions would contribute to global climate change.  In *Washington Environmental Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013), *reh'g en*

*banc denied*, 741 F.3d 1075 (9th Cir. 2014), this Court held that "simply saying that [an agency has] failed to curb emission of greenhouse gases, which contribute (in some undefined way and to some undefined degree) to [plaintiffs'] injuries, relies on an attenuated chain of conjecture insufficient to support standing." *Id.* at 1143 (internal quotation marks omitted). If the Center in this appeal were to continue to rely on its alleged climate change injuries to establish standing, there would be no question that this Court should affirm.

However, the Center here explicitly abandons that argument for standing, and instead relies exclusively on "the injuries to its members' interests from the *surface impacts* of lease development." Opening Br. 31 n. 13 (emphasis in original). Alleged injuries from the surface impacts of lease development were mentioned in the Center's briefing below and in its standing declarations, but were a minor aspect of the declarations in comparison to the portions devoted to climate change injuries. As noted *supra* at 9-10, while all five standing declarations focused extensively on alleged climate change injuries, only the declarations of Steve Gilbert and George Wuerther alleged injuries stemming from the surface impacts of leasing.

BLM did not directly challenge the Center's standing based on the alleged surface impacts.[3] The district court also did not directly address that category of injuries in its decision. The district court concluded that surface impacts were not pertinent to the standing inquiry, because "all of [the Center's] claims are based upon climate change impacts," not "surface disturbance or on-the-ground activities associated with oil and gas development that are wholly independent of alleged climate change impacts." ER 10–11 n.19.

The district court substantially relied on the reasoning of a District of Columbia District Court decision finding that injuries from local pollution related to mining leases did not confer standing to challenge the climate change analysis in the agency's NEPA documents. *WildEarth Guardians v. Salazar,* 880 F. Supp. 2d 77, 84 (D.D.C. 2012). *See* ER 16-17. That decision, however, was reversed on appeal after the district court here entered its ruling. In *WildEarth Guardians v. Jewell*, 738 F.3d 298 (D.C. Cir. 2013), the D.C. Circuit held that the district court "sliced the salami too thin" by requiring "that the specific type of pollution causing the Appellants' aesthetic injury—here, local

---

[3] BLM's district court briefs argued that the Center lacked standing based on its alleged climate change injuries.

pollution—be the same type that was inadequately considered" in the agency's NEPA document; namely, greenhouse gas emissions. *Id.* at 307. According to the court of appeals, the plaintiff organization had standing because its members' aesthetic and recreational injuries were "caused by the allegedly unlawful ROD [Record of Decision] and would be redressed by vacatur of the ROD on the basis of any of the procedural defects identified" in the NEPA document. *Id.* at 308.

Under the rationale of *WildEarth Guardians*, which BLM finds persuasive, the Center may have standing in this case. As noted, two of the Center's declarants mentioned alleged injuries to aesthetic and recreational interests from the surface impacts of oil-and-gas development on certain lease parcels authorized by BLM's decisions. *See* ER 354-56 (Gilbert); 384–88 (Wuerthner). Vacatur of BLM's decisions with respect to those parcels could redress those declarants' injuries by foreclosing development of the parcels. Consistent with the D.C. Circuit's opinion in *WildEarth Guardians*, BLM does not contend that the Center must allege a climate-change-related injury to attack

the climate change analysis in the NEPA documents underlying the

decisions at issue.[4]

## B.    The district court should carry out the surface-impact injury inquiry in the first instance.

BLM believes that this Court should remand so that the district

court can conduct a factual analysis of the Center's standing allegations

based on surface impacts.  *See, e.g.*, *Immigration Assistance Project v.

INS*, 306 F.3d 842, 855 (9th Cir. 2002) (court of appeals remanded to

district court to address standing in first instance where plaintiffs "may

have alleged facts sufficient to grant them standing" in light of

intervening authority); *Cone Corp. v. Hillsborough County*, 5 F.3d 1397,

---

[4]  BLM disagrees, however, with the Center's assertion that once a plaintiff establishes one injury-in-fact, "that person may argue the public interest in support of his claim that the agency has failed to comply with its statutory mandate." Opening Br. 23–24 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 737 (1972).  The D.C. Circuit expressly avoided that flawed theory in *WildEarth Guardians*, 738 F.3d at 307–08.  The public interest concept relied upon by the Center no longer is viable in light of subsequent Supreme Court authority.  A plaintiff must base its standing on its own "concrete and particularized" injury-in-fact, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493–94 (2009), and must allege such an injury caused by each government "action" or "decision" it seeks to set aside.  *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 351–53 & n.5 (2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 568 (1992).  BLM here agrees only that the Center may have standing under the D.C. Circuit's narrower rationale in *WildEarth Guardians*.

1399 (11th Cir. 1993) (remand appropriate because attention paid to one standing issue "may have prevented full development of the facts necessary to a standing determination on [another] point[,]" especially in light of intervening authority); *cf. Parks v. Watson*, 716 F.2d 646, 662 (9th Cir. 1983) (speculating that, under a correct view of the law, plaintiff appeared to have statutory standing, but remanding because "the district judge ha[d] not passed upon this factual inquiry").[5]

The district court is the preferred forum for making the necessary determinations about injuries from surface impacts. A plaintiff must show a "threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of

---

[5] On April 25, 2014, the Appellate Commissioner denied BLM's motion to remand, which was based on arguments similar to those raised here. The Appellate Commissioner's order on a motion to remand does not preclude BLM from seeking the same result from a merits panel. Indeed, a merits panel is generally not bound even by an earlier ruling of a motions panel of judges. *See United States v. Houser*, 804 F.2d 565, 567 (9th Cir.1986) (holding that the law of the case doctrine does not bar a panel reviewing the merits of an appeal from reconsidering a motions panel's ruling on a jurisdictional issue). While the Appellate Commissioner's denial of the motion to remand is not explained, it could have been based simply on the notion that the propriety of a remand should be considered only after full briefing and consideration by a merits panel.

the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("*Summers*"). If, as here, plaintiffs are not the object of government action or inaction, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). For claims brought under NEPA, this Court has described the "'concrete interest' test as requiring a 'geographic nexus' between the individual asserting the claim and the location suffering an environmental impact." *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001) (citing *Douglas County v. Babbitt*, 48 F.3d 1495, 1500 n. 5 (9th Cir. 1995)).

The Center's request (Br. 36) that this Court simply rule that it has standing and remand for a determination of the merits conflates the general question of whether surface-based impacts are legally sufficient to provide standing in this case with the specific factual questions that require resolution before the existence and scope of the Center's standing can be resolved. The Center's complaint challenged the decisions of six BLM field offices. Those decisions covered large

geographic areas and authorized the issuance of, or the lifting of suspensions on, leases of particular parcels scattered throughout those areas. The Center's declarations allege surface impact injuries from a handful of lease parcels, and on that basis the Center would have this Court declare that it has standing to challenge all of the decisions to authorize leasing on parcels spread out across Montana.

But as the Supreme Court has emphasized, "standing is not dispensed in gross," for "[i]f the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review." *Lewis v. Casey*, 518 U.S. 343, 358 (1996). This Court reviews agency decisions allegedly violating NEPA under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005). Because the APA provides for review of only "final agency actions," 5 U.S.C. § 704, the Center cannot "seek *wholesale* improvement" of BLM's oil-and-gas leasing program in Montana, but rather must "direct its attack against some particular 'agency action' that causes it harm." *Lujan v. Nat'l*

19

*Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Standing must be established with respect to each agency action challenged. *See Summers,* 555 U.S. at 494-495 (fact that plaintiffs had established standing with respect to one agency decision based on an allegedly invalid regulation did not permit plaintiffs to broadly challenge the application of the regulation to other agency decisions for which they had not established the elements of standing).

While some of the declarants, like Wade Sikorski, make bare allegations about living "near" some of the leases (ER 361, identifying three leases "a mile or so away from us, on our neighbor's place"), this does not in itself establish that the declarant is likely to suffer injury by reason of surface disturbance caused by those leases. "[G]eneralized harm" to an area "will not alone support standing;" a plaintiff must show that the alleged harm "in fact affects the recreational * * * or even the mere esthetic interests" of the plaintiff. *Summers*, 555 U.S. at 494.

The factual underpinnings of the Center's attempt to challenge these BLM decisions based on alleged surface injuries have not yet been addressed. A remand would permit the district court to consider the factual questions surrounding whether members of the plaintiff

organizations have shown that their particular recreational or esthetic interests are in fact threatened by active leases issued pursuant to the decisions challenged here.

## C. On remand, the District Court should also consider the extent to which the case may be moot

There is another, related problem that confirms the need for a remand on these issues. Article III of the Constitution requires the existence of a live case or controversy throughout all stages of federal judicial proceedings. *See Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005) (*en banc*). Where that condition is not met, the case has become moot and its resolution is no longer within the Court's constitutional authority. *Id.* at 1129; *see also Oregon Natural Resources Council, Inc. v. Grossarth*, 979 F.2d 1377, 1379 (9th Cir. 1992) (finding challenge to a canceled timber sale was moot).

Many of the parcels offered for lease by the challenged decisions were never sold, *i.e.*, they did not receive a bid at the competitive lease sale or a noncompetitive offer within two years of that sale, see 43 C.F.R. § 3120.6, or were terminated because the lease purchaser did not make the annual rental payments required by 43 C.F.R. § 3103.2-2. Among the terminated leases are ones relied upon as allegedly

21

demonstrating injury for purposes of standing. For instance, Lease MTM 101283 in Broadwater County, which is alleged by declarant Steve Gilbert to interfere with his ability to enjoy paddling and fishing on a stretch of the Missouri River (ER 353, ¶6), has been terminated.[6] So has Lease MTM 101287 in Lewis and Clark County, which Mr. Gilbert alleged would interfere with his hunting activities (*id.* at ¶5). Likewise, Lease MTM 101286 in Park County, which is near where Mr. Gilbert has fished on the Shields River (*id.* at ¶4), has been terminated. George Wuerthner similarly complains of terminated leases MTM 101287 and MTM 101286 ((ER 384 ¶17). Mr. Wuerthner also cites Lease MTM 101284 in Gallatin County, which has been terminated.[7]

---

[6] The information in this section regarding terminated or cancelled leases is from paragraphs six and seven of the declaration of Merry Prestridge, a Land Law Examiner for the BLM Montana State Office. That declaration is attached to Appellees' Suggestion of Partial Mootness, which is being filed concurrently with this brief. Facts relating to possible mootness can be brought before the Court at any time. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 23 (1997) ("[i]t is the duty of counsel to bring to the federal tribunal's attention, without delay, facts that may raise a question of mootness"); *see also Seven Words LLC v. Network Solutions,* 260 F.3d 1089, 1094 - 1095 (9th Cir. 2001).

[7] Two of the leases mentioned in the declaration of Wade Sikorski, MTM 98072 and MTM 98073 (ER 361 ¶1), were cancelled because the rental was not paid after the suspension was lifted. Prestridge declaration at ¶ 7. In any event, Mr. Sikorski did not allege any specific

While the standing declarants also claim injury from some leases that remain active, the district court should consider whether there is a sufficient nexus between the particular activities that the declarants wish to pursue and any active leases in those areas that might interfere with those activities.

In addition, the Center's challenge to two of the field office decisions at issue would appear to be entirely moot because none of the parcels offered for lease by those two decisions have active leases.  As set out in the Prestridge Declaration at ¶¶ 8 & 9, of the parcels offered by the Butte field office (FASER 20, 34-47), only five were leased.  All five of those leases have terminated because the lease purchaser did not make annual rental payments.  The other parcels offered by the Butte field office were closed because they did not receive a bid at the competitive lease sale or a noncompetitive offer within two years of that sale.  Similarly, all four of the parcels offered by the Lewistown field office (FASER 85) have been closed because BLM did not receive a bid at the competitive lease sale or a noncompetitive offer within two years of that sale.

injury from surface disturbance impacts, focusing instead solely on global warming impacts.  ER 362-371.

The Supreme Court's decision in *Summers,* 555 U.S. at 494-95, supports the need for a remand for consideration by the district court of these issues.  The organizational plaintiff in *Summers* had initially established standing to challenge the validity of a regulation exempting timber sales from certain requirements by submitting the affidavit of an organization member who had repeatedly visited the site of a planned timber sale, had imminent plans for returning to that site, and who would be injured by cutting of the trees there.  The Court found, however, that after the timber sale for that site was cancelled as a result of a settlement, Article III jurisdiction to consider the propriety of the challenged regulation no longer existed *unless* the plaintiffs could show that the challenged regulation would be applied at some other specific site where they could make a similar showing of concrete harm. *Id.* at 494-95.  *Summers* confirms the need for a factual inquiry into the status of remaining leases, and whether they threaten imminent and concrete harm to any organization members, in order for the court to assure that there is continuing Article III jurisdiction in this case.

24

## CONCLUSION

For the foregoing reasons, the district court's judgment should be vacated and the case remanded for a determination of whether the Center has demonstrated standing on the basis of alleged injuries from surface disturbance caused by the challenged decisions. The district court should also consider whether and to what extent challenges to BLM's decisions may have become moot. The district court should consider the merits of the Center's challenges only to the extent that it finds that there remains a live controversy and that the Center has demonstrated standing based on surface disturbance injuries.

Respectfully submitted,

SAM HIRSCH
 Acting Assistant Attorney General

*/s/David C. Shilton*
DAVID C. SHILTON
NICHOLAS A. DIMASCIO
 Attorneys, U.S. Dep't of Justice
  Env't & Natural Resources Div.
  P.O. Box 7415
June 6, 2014      Washington, DC  20044
90-1-4-13364     (202) 514-5580
          david.shilton@usdoj.gov

## STATEMENT OF RELATED CASES

Counsel for the United States is unaware of any case that is

related to this appeal within the meaning of Ninth Circuit Rule 28-2.6.

 */s/ David C. Shilton*
DAVID C. SHILTON
Attorney, U.S. Dep't of Justice
 Env't & Natural Resources Div.
 P.O. Box 7415
 Washington, DC  20044
 (202) 514-5580

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

This brief complies with the type volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. Excepting the portions described in Rule 32(a)(7)(B)(iii), the brief contains 4,995 words.

*/s/ David C. Shilton*
DAVID C. SHILTON
Attorney, U.S. Dep't of Justice
 Env't & Natural Resources Div.
 P.O. Box 7415
 Washington, DC  20044
 (202) 514-5580

CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014, I electronically filed the forgoing Federal Defendants-Appellees Answering Brief, along with Federal Appellees' Supplemental Excerpts of Record, with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ David C. Shilton*
DAVID C. SHILTON
Attorney, U.S. Dep't of Justice
  Env't & Natural Resources Div.
  P.O. Box 7415
  Washington, DC  20044
  (202) 514-5580