No. 13-35688

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Montana Environmental Information Center, Earthworks' Oil and Gas
Accountability Project and WildEarth Guardians,
Plaintiffs-Appellants,

vs.

U.S. Bureau of Land Management, Sally Jewell, Jamie Connell, Theresa Hanley,
Defendants-Appellees,

and

American Petroleum Institute, Montana Petroleum Association, Montana Chamber
of Commerce, Western Energy Alliance,
Intervenor-Defendants-Appellees,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MONTANA, CASE No. 4:11-00015-SEH

## APPELLANTS' REPLY BRIEF

Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
406.204.4861
hernandez@westernlaw.org

Erik Schlenker-Goodrich
Western Environmental Law Center
208 Paseo del Pueblo Sur, Unit 602

Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, Montana 59807
406.549.3895
smcmillan@wildearthguardians.org

Taos, New Mexico 87571
575.613.4197
eriksg@westernlaw.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................iii

TABLE OF AUTHORITIES ..........................................................v

INTRODUCTION ..........................................................................1

ARGUMENT ................................................................................1

I.    Standing to Raise Climate Arguments under the National
      Environmental Policy Act May Be Premised on Local Impacts from
      the Challenged Agency Action.................................................1

      A.    MEIC Need Only Establish the Elements of Standing with
            Regard to the Challenged Agency Action—Not Each
            Procedural Flaw in BLM's NEPA Analysis. .......................2

      B.    The Petroleum Institute's Attempt to Distinguish *WildEarth
            Guardians* Fails. ..............................................................6

      C.    The Petroleum Institute's Policy Arguments Are Without Merit.........9

      D.    Even If This Court Does Not Follow *WildEarth Guardians*,
            MEIC Still Has Standing to Assert Its Cumulative Effects
            Argument.........................................................................12

II.   This Court Should Hold that MEIC Has Standing and Remand the
      Case for Resolution of the Merits...........................................14

      A.    Remand Is Unwarranted Because the Record Before This Court
            Is Sufficient to Establish Standing. ..................................15

      B.    MEIC Has Established Standing to Challenge the Leasing
            Decision from Each BLM Field Office................................17

      C.    BLM Has Not Attempted to Meet the Heavy Burden of
            Demonstrating Mootness of Any Aspect of MEIC's Case,
            Though It Will Be Free to Raise Mootness Arguments on
            Remand...........................................................................21

CONCLUSION ...........................................................................22

CERTIFICATE OF SERVICE ...................................................................24

CERTIFICATE OF COMPLIANCE.......................................................24

# TABLE OF AUTHORITIES

## Cases

*Am. Elec. Power v. Conn.*,
   131 S. Ct. 2527 (2011) ...............................................................................8

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
   397 U.S. 150 (1970) ...................................................................................4

*Barnes v. U.S. Dep't of Transp.*,
   655 F.3d 1124 (9th Cir. 2011) .................................................................11

*Bd. of Natural Res. of St. of Wash. v. Brown*,
   992 F.2d 937 (9th Cir. 1993) .....................................................................5

*Border Power Plant Working Group v. Dep't of Energy*,
   260 F. Supp. 2d 997 (S.D. Cal. 2003) ....................................................10

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001) ...................................................................15

*Center for Biological Diversity v. National Highway Traffic Safety Admin.*,
   538 F.3d 1172 (9th Cir. 2008) .................................................................14

*Center for Biological Diversity v. U.S. Department of Interior*,
   563 F.3d 466 (D.C. Cir. 2009) ....................................................... 3, 8, 10

*Chaudhry v. City of Los Angeles*,
   751 F.3d 1096 (9th Cir. 2014) .................................................................12

*Citizens for Better Forestry v. U.S. Dep't of Agric.*,
   341 F.3d 961 (9th Cir. 2003) ......................................................... 4, 8, 15

*City of Davis v. Coleman*,
   521 F.2d 661 (9th Cir. 1975) ........................................................... 12, 13

*City of Los Angeles v. Nat'l Highway Traffic Safety Admin.*,
   912 F.2d 478 (D.C. Cir.)................................................................. 10, 12

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) ...............................................................4, 5

*Clapper v. Amnesty Int'l USA*,
 133 S. Ct. 1138 (2013) .......................................................................10

*Conn. v. Am. Elec. Power*,
 582 F.3d 309 (2d Cir. 2009) ................................................................8

*Covington v. Jefferson Co.*,
 358 F.3d 626 (9th Cir. 2004) .............................................................12

*Ctr. for Biological Diversity v. Kempthorne*,
 588 F.3d 701 (9th Cir. 2009) ................................................... 5, 11, 13

*DaimlerChrysler v. Cuno*,
 547 U.S. 332 (2006) ................................................................... 10, 17

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
 438 U.S. 59 (1978) ........................................................................3, 5

*Ecological Rights Found. v. P. Lumber Co.*,
 230 F.3d 1141 (2000) .......................................................................12

*Friends of the Earth v. Consol. Rail Corp.*,
 768 F.2d 57 (2d Cir. 1985) ................................................................20

*Friends of the Earth v. Gaston Copper Recycling Corp.*,
 204 F.3d 149 (4th Cir. 2000) .............................................................11

*Friends of the Earth v. Laidlaw*,
 528 U.S. 167 (2000) .........................................................................21

*High Country Conservation Advocates v. U.S. Forest Serv.*,
 No. 13-cv-1723-RBJ, 2014 WL 2922751 (D. Colo. June 27, 2014) .. 5, 10, 11, 13

*Laub v. U.S. Dep't of Interior*,
 342 F.3d 1080 (9th Cir. 2009) ...........................................................16

*Lewis v. Casey*,
 518 U.S. 343 (1996) .........................................................................17

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ..................................................................... 4, 11

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ...................................................................................18

*Marsh v. Or. Natural Res. Council*,
    490 U.S. 360 (1989) ...................................................................................11

*Massachusetts v. EPA*,
    549 U.S. 497 (2006) ................................................................................7, 9

*Name.Space, Inc. v. Network Solutions, Inc.*,
    202 F.3d 573 (2d Cir. 2000) .......................................................................7

*Nat'l Parks Conservation Ass'n v. BLM*,
    606 F.3d 1058 (9th Cir. 2010) ...................................................................18

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
    402 F.3d 846 (9th Cir. 2005) .......................................................................5

*Parks v. Watson*,
    716 F.2d 646 (1983) ...................................................................................15

*S. Utah Wilderness Ass'n v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) .................................................................18

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) .....................................................................................5

*Sierra Club v. Adams*,
    578 F.2d 389 (D.C. Cir. 1978) .....................................................................6

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ...................................................................................11

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) .......................................................................................4

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ...................................................................................11

*United States v. Metro. St. Louis Sewer Dist.*,
    883 F.2d 54 (8th Cir. 1989)........................................................................20

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................12

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013).............................................8

*Wash. Envtl. Council v. Bellon*,
  741 F.3d 1075 (9th Cir. 2014).............................................8

*White Tanks Concerned Citizens, Inc. v. Strock*,
  563 F.3d 1033 (9th Cir. 2009)...........................................15

*WildEarth Guardians v. Jewell*,
  738 F.3d 298 (D.C. Cir. 2013) .................................. passim

*WildEarth Guardians v. U.S. Forest Serv.*,
  828 F. Supp. 2d 1223 (D. Colo. 2011) ...............................10

## Statutes

42 U.S.C. § 4332(2)(C)..........................................................9

42 U.S.C. § 4332(2)(E) ..........................................................9

42 U.S.C. § 4332(2)(F) .........................................................12

## Court Rules

Fed. R. Civ. P. 1 ...................................................................17

## Other Authorities

Cass Sunstein, *The Supreme Court, 1995 Term—Forward: Leaving Things
  Undecided*, 110 Harv. L. Rev. 4, 6 (1995) ...........................8

**INTRODUCTION**

This Court should hold that Appellants (collectively, "MEIC") have standing and remand to the district court for resolution of the merits. Appellees (collectively "BLM") now concede that MEIC's theory of standing is correct and that the district court's ruling was reversible error. Dkt. 36-1 at 11, 14-16, 25. The agency's request that this Court, nevertheless, defer resolution of standing to the district court on remand is unwarranted and would waste judicial resources. *Cf. id.* at 16-21.

Intervenor-Appellees (collectively, "Petroleum Institute") alone persist in arguing that MEIC lacks standing. Dkt. 20-1 at 41-61. The Petroleum Institute's argument, however, is unsupported by law or fact.

Below, MEIC addresses the Petroleum Institute's argument first and BLM's arguments second.

**ARGUMENT**

**I.     Standing to Raise Climate Arguments under the National Environmental Policy Act May Be Premised on Local Impacts from the Challenged Agency Action.**

MEIC's principal argument below on standing and sole argument on appeal is straightforward: MEIC has standing because the local *surface impacts* from development of oil and gas leases issued by BLM will cause harm to its members' recreational, aesthetic, and professional interests and such harm will be redressed if

1

BLM's leasing decisions are vacated. Dkt. 9-1 at 18-21; Dist. Ct. Doc. 55 at i, 2-4. Standing established, MEIC may challenge BLM's leasing decision on any basis on which the agency failed to comply with its National Environmental Policy Act (NEPA) obligations—including failure to consider impacts related to climate change. Dkt. 9-1 at 23-31.

The D.C. Circuit adopted this very argument in *WildEarth Guardians v. Jewell*, 738 F.3d 298, 304-08 (D.C. Cir. 2013). BLM agrees that the standing analysis from *WildEarth Guardians* is "correct." Dkt. 36-1 at 11. Accordingly, BLM now concedes the district court erred in holding that harm from the surface impacts could not support standing, acknowledges that MEIC "may have standing," and asks that the district court's ruling be vacated. Dkt. 36-1 at 14-16, 25. The Petroleum Institute alone continues to challenge MEIC's standing, but its arguments fail in light of *WildEarth Guardians* and the facts of this case.

### A. MEIC Need Only Establish the Elements of Standing with Regard to the Challenged Agency Action—Not Each Procedural Flaw in BLM's NEPA Analysis.

In *WildEarth Guardians*, plaintiffs challenged a BLM coal lease on NEPA grounds, arguing among other things, that the agency did not adequately consider greenhouse gas (GHG) pollution caused by the lease. 738 F.3d at 305-07. The district court in that case—in an opinion relied on by the district court here—acknowledged local pollution from the lease would harm plaintiffs, but held they

lacked standing for their climate change arguments because they could not link GHG pollution from the leases to their members' concrete interests. *Id.* at 306-07.

The D.C. Circuit reversed, holding that the district court "sliced the salami too thin" by "requir[ing] that the specific type of pollution causing the Appellant's aesthetic injury—here, local pollution—be the same type that was inadequately considered in the FEIS [final environmental impact statement, i.e., the agency's NEPA analysis]." *Id.* at 307. Citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 78-79 (1978), and *Center for Biological Diversity v. U.S. Department of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009),[1] the court ruled:

> The Appellants may challenge each of the alleged inadequacies in the FEIS because each constitutes a procedural injury connected to their members' recreational and aesthetic interests: Their members' injuries are caused by the allegedly unlawful ROD [record of decision, i.e., the lease decision] and would be redressed by vacatur of the ROD [lease decision] *on the basis of any* of the procedural defects identified in the FEIS.

738 F.3d at 308 (emphasis added). Thus, local impacts support standing to raise climate arguments under NEPA.

The Petroleum Institute's principal argument—that to establish standing MEIC must satisfy the elements of standing (particularly, causation and redressability) for each NEPA argument raised—is refuted by *WildEarth*

---

[1]  MEIC cited both cases in its opening brief. Dkt 9-1 at 24, 25, 28.

*Guardians*.  Dkt. 20-1 at 41-54.  The Petroleum Institute cites only *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992), to support its argument.  Dkt. 20-

1 at 42.  But *Lujan* cuts the other way, stating in the very sentence cited by the

Petroleum Institute that for standing a plaintiff need only trace its injury "to the

*challenged action of the defendant*."  504 U.S. at 560 (emphasis added) (quoting

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  This was the

precise point of *WildEarth Guardians*: for standing, a plaintiff need only establish

the necessary elements with regard to the *challenged agency action*, not each

NEPA argument.  738 F.3d at 307-08.[2]  This followed, the D.C. Circuit reasoned,

from the Supreme Court's holding in *Duke Power Co.* that—outside the context of

taxpayer suits—the injury that provides the basis for standing need not be

connected to a plaintiff's legal argument:

> "Looking 'to the substantive issues' which *Flast* stated to be both
> 'appropriate and necessary' in relation to taxpayer standing was for
> the express purpose of determining 'whether there is a logical nexus
> between the taxpayer status asserted and the claims sought to be
> adjudicated.'  This step is not appropriate on a claim of citizen
> standing since the *Flast* nexus test is not applicable where the taxing
> and spending power is not challenged . . . ."

---

[2]  *See also, e.g.*, *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180-81 (2000)
(injury must be traceable to the "*challenged action of the defendant*" (emphasis
added)); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152
(1970) ("The first question is whether the plaintiff alleges that the *challenged
action* has caused him injury . . . ." (emphasis added)); *City of Sausalito v. O'Neill*,
386 F.3d 1186, 1197 (9th Cir. 2004) (same); *Citizens for Better Forestry v. U.S.
Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) (same).

> We continue to be of the same view and cannot accept the contention that, outside the context of taxpayers' suits, a litigant must demonstrate something more than injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury to satisfy the "case or controversy" requirement of Article III.

438 U.S. at 79 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 225 n.15 (1974)) (internal citation and brackets omitted), *followed in Bd. of Natural Res. of St. of Wash. v. Brown*, 992 F.2d 937, 945 (9th Cir. 1993).[3] Consistent with these authorities, the Ninth Circuit has never, by MEIC's research, required plaintiffs to establish standing for each NEPA argument raised against a single challenged agency action.[4]

*Duke Power Co.* and *Brown* are binding authorities and fatal to the Petroleum Institute's argument. MEIC cited these cases in its opening brief, but the Petroleum Institute declined to address them, tacitly acknowledging that they undermine the base premise of its argument. Dkt. 9-1 at 24; Dkt. 20-1 at iv-v.

---

[3] *See also High Country Conservation Advocates v. U.S. Forest Serv.*, No. 13-cv-1723-RBJ, 2014 WL 2922751, at **5-6 (D. Colo. June 27, 2014) (holding that pursuant to *Duke Power Co.*, plaintiffs suffering local impacts from agency action have standing to raise NEPA arguments related to climate change).

[4] *Cf., e.g.*, *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197-99, 1206-15 (9th Cir. 2004) (standing based on local impacts; plaintiffs raised multiple procedural arguments); *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859-61, 864-71 (9th Cir. 2005) (same); *see also Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707-08, 711-12 (9th Cir. 2009) (allowing plaintiffs to raise cumulative impacts claim related to climate change after establishing standing based on local impacts from off-shore oil and gas operations).

### B.    The Petroleum Institute's Attempt to Distinguish *WildEarth Guardians* Fails.

The Petroleum Institute first tries to distinguish *WildEarth Guardians* by attributing to the case a holding that the D.C. Circuit expressly declined to make: "*WildEarth Guardians* may ultimately stand for nothing more than the unremarkable proposition that once a plaintiff establishes standing to challenge agency action on one ground [i.e., one NEPA argument], it may seek relief on any basis . . . ." Dkt. 20-1 at 56-57. Applying this supposed holding, the Petroleum Institute asserts that *WildEarth Guardians* is not applicable to the instant case because, it contends, MEIC's arguments relate exclusively to climate change.[5] *Id.* at 57. This argument fails.

*WildEarth Guardians* expressly declined to adopt this rationale, which was based on *Sierra Club v. Adams*, 578 F.2d 389, 392 (D.C. Cir. 1978) ("We hold, therefore, that, because appellees have established an independent basis for standing to challenge the [NEPA analysis], they also have standing to argue the public interest . . . ."). The *WildEarth Guardians* court wrote: "We express no opinion on whether the 'public interest' rationale remains cognizable in light of subsequent Supreme Court precedent. . . . We rest our holding on a different

---

[5] The Petroleum Institute is factually, as well as legally, mistaken on this point. As clarified below, MEIC's cumulative impacts argument, while related to climate change, is premised on the *surface impacts* of lease development. *See infra* Part I.D.

6

rationale." 738 F.3d at 307-08 (internal citations omitted). As is applicable here, the court then held that the plaintiffs had standing because the *challenged agency action*, i.e., the lease decision, caused plaintiffs harm that would be redressed by vacatur of the lease. *Id.* at 308. As noted, this holding was premised on the Supreme Court's ruling in *Duke Power Co.*, a binding authority, which the Petroleum Institute has revealingly declined to address. *Id.* at 307-08. Thus, the Petroleum Institute's proffered distinction fails.

The Petroleum Institute next attempts to avoid *WildEarth Guardians* (and implicitly, *Duke Power Co.* and *Brown*) by contending that *Massachusetts v. EPA*, 549 U.S. 497 (2006), established a "general rule" that "private party plaintiffs do not have standing to challenge agency action based on the effects of global climate change." Dkt. 20-1 at 54; *see also id.* at 26-27, 58-59. But the Court made no such rule, either explicitly or implicitly. After all, the Court in *Massachusetts* found standing based on impacts of GHG pollution. 549 U.S. at 526. That the ruling was narrow and only addressed standing for state plaintiffs was unsurprising: this is how courts and the common law operate, particularly when addressing complex, emerging issues. *E.g.*, *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 584 (2d Cir. 2000).[6] Neither the Supreme Court nor any other appellate court has

---

[6] "Frequently judges decide no more than they have to decide. They leave things open. They make deliberate decisions about what should be left unsaid. This practice is pervasive: doing and saying as little as necessary to justify an outcome."

interpreted the narrow ruling in *Massachusetts* as barring private plaintiffs from litigating issues related to climate change.[7]

Notably, in his recent concurrence on this Court's denial of rehearing *en banc* of *Washington Environmental Council v. Bellon*, Judge Smith, the author of the original panel decision,[8] wrote that the decision "*leaves open the many doors that previously existed under our case law for . . . private parties to litigate with respect to injuries resulting from global climate change*," citing cases involving procedural NEPA violations—like the instant case—as an example of one such open door.[9] Thus the uniform opinion of appellate courts addressing the issue is that, contrary to the Petroleum Institute's contention, there is no "general rule" that

---

Cass Sunstein, *The Supreme Court, 1995 Term—Forward: Leaving Things Undecided*, 110 Harv. L. Rev. 4, 6 (1995).

[7] *Am. Elec. Power v. Conn.*, 131 S. Ct. 2527, 2535 (2011) (4-4 decision, affirming by equally divided court) (stating that "*at least* some plaintiffs have Article III standing" to raise nuisance claim based on GHG emissions, implying that question of standing for private parties is open (emphasis added)); *Conn. v. Am. Elec. Power*, 582 F.3d 309, 339-49 (2d Cir. 2009) (holding that private land trusts had standing to raise nuisance claim based on GHG emissions), *aff'd in part by equally divided court, rev'd on other grounds*, 131 S. Ct. 2527 (2011); *WildEarth Guardians*, 738 F.3d at 308 (holding private plaintiffs have standing to raise climate-change-related NEPA claim); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009) (holding private plaintiffs had standing to raise climate-change-related NEPA and Endangered Species Act claims).

[8] *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013).

[9] *Wash. Envtl. Council v. Bellon*, 741 F.3d 1075, 1078 (9th Cir. 2014) (M. Smith, J., concurring) (citing *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 970-71 (9th Cir. 2003)).

"private party plaintiffs do not have standing to challenge agency action based on the effects of global climate change."  Dkt. 20-1 at 54.

### C.    The Petroleum Institute's Policy Arguments Are Without Merit.

The Petroleum Institute raises two related policy arguments that are each without merit.  First, the Petroleum Institute contends that the discussion of a "meaningful contribution" to global GHG concentrations in the causation analysis in *Massachusetts* was intended to prevent the "piecemeal judicial regulation of climate change," and thus should bar standing in the instant case.  Dkt. 20-1 at 60.  The short answer is that no appellate court has interpreted *Massachusetts* to limit private plaintiffs' standing to raise climate-change-related arguments in NEPA suits.  *See supra* notes 7-9 and accompanying text.

Further, contrary to the Petroleum Institute's assertion, the Court in *Massachusetts* affirmed that plaintiffs can "whittle away" at the problem of climate change by challenging administrative actions "in a federal judicial forum."  549 U.S. at 524.  Moreover, MEIC does not seek, by virtue of its NEPA arguments, to substantively regulate GHG pollution, but merely to require BLM to take the congressionally mandated "hard look" at the environmental consequences of its actions and consider reasonable alternatives.  42 U.S.C. § 4332(2)(C), (E).  Judicial review of agency compliance with the procedural mandates of NEPA is commonplace and raises none of the separation-of-powers concerns that inform the

9

standing doctrine.  *Cf., e.g.*, *DaimlerChrysler v. Cuno*, 547 U.S. 332, 345 (2006)

(separation-of-powers concern in taxpayer suit); *Clapper v. Amnesty Int'l USA*,

133 S. Ct. 1138, 1147 (2013) (same in case involving "intelligence gathering and

foreign affairs").

Second, the Petroleum Institute's prediction of a flood of litigation[10] is

hyperbole that should not be allowed to distort controlling and persuasive standing

jurisprudence from *Duke Energy*, *Brown*, and *WildEarth Guardians*.[11]  MEIC's

theory of standing is subject to the basic limitation that has been the touchstone of

the Supreme Court's standing jurisprudence in environmental cases since *Sierra*

*Club v. Morton*: plaintiffs must establish a geographic nexus to the location

impacted by challenged agency action.[12]  This limits judicial review to those

---

[10]   *See* Dkt. 20-1 at 60-61 ("[T]he results of MEIC's theory are not
inconsequential. . . .  The list goes on and on.").

[11]   *See also Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466,
479 (D.C. Cir. 2009) (standing to raise climate arguments in NEPA based on local
impacts); *accord High Country Conservation Advocates v. U.S. Forest Serv.*, No.
13-cv-1723-RBJ, 2014 WL 2922751, at **5-6 (D. Colo. June 27, 2014); *WildEarth
Guardians v. U.S. Forest Serv.*, 828 F. Supp. 2d 1223, 1235 (D. Colo. 2011);
*Border Power Plant Working Group v. Dep't of Energy*, 260 F. Supp. 2d 997,
1010-11, 1028-29 (S.D. Cal. 2003); *cf. City of Los Angeles v. Nat'l Highway
Traffic Safety Admin.*, 912 F.2d 478, 504 (D.C. Cir.) (indicating that standing in
NEPA cases turns on the impacts of the challenged action and not the merits of
each NEPA argument), (R. Ginsburg, J., concurring), *majority overruled by
Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) (en banc).

[12]   *Morton*, 405 U.S. 727, 734-35 (1972) (requiring plaintiff to show that its
members use impacted area and that use would be impacted by challenged action);
*see Friends of the Earth v. Laidlaw*, 528 U.S. 167, 183 (2000) (plaintiffs have
standing "when they aver that they use the affected area and are persons 'for whom

people, like MEIC's members here,[13] who have a "direct stake" in a matter,

*Morton*, 405 U.S. at 740, and excludes the "roving environmental ombudsman

seeking to right environmental wrongs wherever he might find them," *Friends of

the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 157 (4th Cir. 2000).

Given that NEPA analysis is subject to a "rule of reason,"[14] merits rulings

will further refine what agencies are required to evaluate with respect to climate

change impacts and, accordingly, what kinds of cases may be brought.  As noted in

MEIC's opening brief, this process has already begun.[15]  Thus, the Petroleum

Institute's flood warnings are unavailing.

The Petroleum Institute's position on the other hand would improperly

insulate agency analysis of GHG emissions and climate change impacts from

judicial review altogether.  *Cf. Morton*, 405 U.S. at 740 (expressing concern that

---

the aesthetic and recreational values of the area will be lessened' by the challenged
activity" (quoting *Morton*, 405 U.S. at 735); *see also Lujan*, 504 U.S. at 562-63
(requiring geographic nexus, per *Morton*); *Summers v. Earth Island Institute*, 555
U.S. 488, 494 (2009) (affidavit that member visits site of project and interests in
area would be harmed establishes standing); *cf., e.g.*, *City of Davis v. Coleman*,
521 F.2d 661, 671 (9th Cir. 1975) (describing "geographical nexus" test).
[13]  MEIC's members ranch, hunt, hike, photograph, and canoe in lands BLM has
leased for oil and gas development.  Dkt. 9-1 at 7-12.
[14]  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 373 (1989).
[15]  *Compare Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*,
538 F.3d 1172, 1215-27 (9th Cir. 2008) (upholding climate-change-related NEPA
challenge to agency action), *and High Country Conservation Advocates*, 2014 WL
2922751, at **8-11 (same), *with Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124,
1139-40 (9th Cir. 2011) (rejecting climate-change-related NEPA arguments on
merits), *and Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 711-12
(9th Cir. 2009) (same).

standing requirements not be so narrow to "insulate executive action from judicial review" and "prevent any public interests from being protected"). Congress's intention that agencies' NEPA analyses address the "world wide and long-range character of environmental problems," 42 U.S.C. § 4332(2)(F), would be thwarted if plaintiffs, rather than agencies, are required to conduct this analysis as a constitutional prerequisite of any NEPA suit. *Cf. City of Davis v. Coleman*, 521 F.2d 661, 670-71 (9th Cir. 1975).

The Petroleum Institute's policy arguments fail. The overly stringent standing requirements advocated by the Petroleum Institute are contrary to our congressionally decreed national environmental policy.

### D.    Even If This Court Does Not Follow *WildEarth Guardians*, MEIC Still Has Standing to Assert Its Cumulative Effects Argument.

In *City of Los Angeles*, then-Judge Ruth Bader Ginsburg warned that requiring plaintiffs to establish standing for each NEPA argument improperly confuses standing and merits. 912 F.2d at 504.[16] In arguing that MEIC lacks

---

[16] *See also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014) ("[A]rticle III 'standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *Covington v. Jefferson Co.*, 358 F.3d 626, 639 (9th Cir. 2004) (rejecting defendants' attempt "to convert the standing issue into a question of whether there have been violations of [the statute]"); *Ecological Rights Found. v. P. Lumber Co.*, 230 F.3d 1141, 1151-52 (2000).

standing to raise its cumulative impacts argument, the Petroleum Institute runs afoul of this admonition.

The Petroleum Institute contends that MEIC lacks standing to challenge BLM's failure to analyze the surface impacts of oil and gas development together with anticipated impacts of climate change because such NEPA analysis would be "impossible." Dkt. 20-1 at 49.[17] But in its merits briefing below, MEIC contested this claim, asserting that a *qualitative* analysis of such cumulative impacts was possible. Dist. Ct. Doc. 55 at 26. The U.S. Environmental Protection Agency said the same in comments. ER at 345. This is thus a question of the merits, not standing.[18] For standing, it is enough that MEIC's members "hav[e] a sufficient geographical nexus to the site of the challenged project that [they] may be expected to suffer whatever environmental consequences the project may have." *City of Davis*, 521 F.2d at 671. MEIC has made this demonstration. Dkt. 9-1 at 18-21.[19]

---

[17] *See also High Country Conservation Advocates*, 2014 WL 2922751, at *9 (rejecting BLM's argument that any analysis of impacts from GHG pollution would be "impossible").

[18] For this same reason, the Petroleum Institute's attempt to distinguish *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), Dkt. 20-1 at 53, also fails: for purposes of standing, it is immaterial whether an agency defendant or industry intervenor contests whether environmental analysis sought by a plaintiff is possible. That is a question of the merits.

[19] The Petroleum Institute's hypertechnical argument that MEIC lacks standing because 2 of the 26 leases in areas in which Steve Gilbert regularly recreates have been cancelled fails because the other leases have not been cancelled and continue to threaten his concrete interests. *See infra* Part II. Mr. Gilbert's concern about cumulative impacts applies to all areas where leases are located. ER355-57 at

The Petroleum Institute further confuses the issue by attempting to distinguish *Center for Biological Diversity v. National Highway Traffic Safety Admin.*, 538 F.3d 1172 (9th Cir. 2008), on the basis of the greater volume of GHG emissions at issue in that case. Dkt. 20-1 at 51-52. MEIC's cumulative effects argument is not about the GHG emissions from the challenged leases, but rather the combined impacts of the *surface activities* of lease development and the anticipated effects of climate change on the same regions of Montana where the leases are located, regardless of the precise cause. ER at 340-41 at ¶¶ 175, 177; Dist. Ct. Doc. 35 at 23. Accordingly, the Petroleum Institute's purported distinction is inapposite.

In sum, the Petroleum Institute's opposition to MEIC's standing theory—and, ultimately, to MEIC's standing itself—fails.

## II.    This Court Should Hold that MEIC Has Standing and Remand the Case for Resolution of the Merits.

MEIC agrees with BLM that the district court committed reversible error in holding that harm from surface impacts could not support MEIC's standing. Dkt. 36-1 at 14-15, 25. MEIC, however, opposes BLM's request that this Court abstain from ruling on whether MEIC does, in fact, have standing. *Id.* at 16-21; *cf.* Dkt. 31-1 at 1-7 (opposing initial motion to remand). BLM's request is unwarranted,

---

¶¶ 11-13 ("The impacts from climate change only compound problems already caused by oil and gas development and production in areas where I recreate, such as habitat fragmentation and degradation of water resources.").

would waste the resources of the courts and parties, and has already been rejected once by the Appellate Commissioner.  *See* Dkt. 33 at 1.  This Court should hold that MEIC has standing and remand to the district court for ruling on the merits.

### A.    Remand Is Unwarranted Because the Record Before This Court Is Sufficient to Establish Standing.

While this Court has authority to remand the case to the district court to address MEIC's standing in light of the correct legal standard, *see Parks v. Watson*, 716 F.2d 646, 662 (1983), doing so is neither required nor warranted. Courts routinely resolve standing on appeal, as the D.C. Circuit did in *WildEarth Guardians*, and as the Ninth Circuit has done in numerous cases.[20]  This Court should do so here.

That standing is, as BLM correctly notes, fact-intensive and case-specific is no reason to remand the issue to the district court.  The record on appeal is more than adequate for this court to determine that MEIC has standing based on the harm that specific oil and gas leases will cause to MEIC's members Wade Sikorski, Steve Gilbert, and George Wuerthner.  ER351-94; *see also* Dkt. 9-1 at

---

[20]  *See, e.g.*, *Cantrell v. City of Long Beach*, 241 F.3d 674, 679-682 (9th Cir. 2001) (finding standing on appeal after district court denied standing by applying the incorrect legal standard in NEPA case); *White Tanks Concerned Citizens, Inc. v. Strock*, 563 F.3d 1033, 1038-39 (9th Cir. 2009) (finding standing on appeal after district court denied standing); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969-76 (9th Cir. 2003) (same).

7-12, 18-21 (demonstrating standing based on harm to members' interests from surface impacts of lease development).

Further, BLM should not get a second (or third) bite at the standing apple. *Cf. Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1085 (9th Cir. 2009) (finding "troubling" defendant's decision to challenge standing for first time on appeal). As noted in its opposition to BLM's initial motion for remand (which was denied by the Appellate Commissioner), MEIC presented the same facts and argument to support standing at the district court that it has presented on appeal. *See* Dkt. 31-1 at 1-4. BLM acknowledges that before the district court, it "did not directly challenge [MEIC's] standing based on the alleged surface impacts." Dkt. 36-1 at 14; Dkt. 31-1 at 2. Nor has BLM (or the Petroleum Institute) challenged the factual underpinnings of MEIC's standing declarations on appeal. After neglecting to address MEIC's principal standing argument at the district court (surface impacts), *see* Dkt. 31-1 at 1-4, and again on appeal, BLM should not be permitted, as it seems to intend, to retool its position and challenge MEIC's standing on different grounds on remand, *see* Dkt. 36-1 at 12 (stating that "it remains unclear whether [MEIC's members] are likely to suffer concrete injury from BLM's decision to lease these parcels"); *id.* at 20 (stating that "[t]he factual underpinnings of [MEIC's] attempt to challenge these decisions based on alleged surface injuries have not yet been addressed").

16

This Court's resolution of standing will save significant resources of both the parties and the courts. If the question of standing is remanded, the district court would be free to again rule that MEIC lacks standing (based on surface impacts) and decline to address the merits. This would necessitate another appeal, delaying resolution of the merits of this case for years, and wasting judicial resources on additional collateral litigation. *Cf.* Fed. R. Civ. P. 1 (goal of Federal Rules is to "secure the just, speedy, and inexpensive determination of every action and proceeding").

BLM's request for this Court to pass on the question of standing, which is the entire purpose of this appeal, and remand to the district court should be denied.

### B.  MEIC Has Established Standing to Challenge the Leasing Decision from Each BLM Field Office.

The undisputed evidence in the record demonstrates that MEIC has standing to challenge the oil and gas leasing decisions of each BLM Field Office (FO) involved in this case: Billings, Butte, Dillon, Lewiston, Malta, and Miles City.

BLM is correct that "standing is not dispensed in gross" and that a plaintiff must establish standing for each agency action challenged. Dkt. 36-1 at 19; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 (1996)). BLM is also correct that a plaintiff cannot use a single case to "seek wholesale improvement" in BLM's oil and gas leasing

17

program.  Dkt. 36-1 at 19; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  But those principles have no bearing on the instant case.

BLM errs in suggesting that the relevant final agency actions are the individual leases.  Dkt. 36-1 at 18-19.  The final agency action in the leasing process that is ultimately being challenged here is BLM's decision rejecting MEIC's protest of the contested leases.  *Nat'l Parks Conservation Ass'n v. BLM*, 606 F.3d 1058, 1064-65 (9th Cir. 2010); ER339 at ¶ 165.  This decision embraced the lease decision-making process, including the NEPA analyses and NEPA decisions of all six BLM field offices.  *See* Appellants' Supplemental Excerpts of Record (ASER) 001-002.  Because this decision consummated the oil and gas leasing process of all six field offices, MEIC need only demonstrate that its members' concrete interests will be harmed by any of the leases from the six field offices, which it has done.  Dkt. 9-1 at 18-21; *S. Utah Wilderness Ass'n v. Palma*, 707 F.3d 1143, 1155 (10th Cir. 2013) (declarants need not "traverse each bit of land that will be affected by a challenged action" to establish standing).

In any case, MEIC's standing declarations demonstrate that the leases executed by BLM from *each* field office will cause harm to its members' interests that would be redressed if the leases are vacated.

The lease decision from the Billings FO includes leases in Musselshell, Sweet Grass, and Stillwater Counties.  FASER 5.  Steve Gilbert (MEIC member)

hunts, fishes, or canoes near leased parcels in Musselshell, Sweet Grass, and Stillwater Counties.  ER355-56 at ¶ 11.  Industrial development on these leases is anathema to his interest in the quiet of undeveloped land and will cause him to avoid these areas and curtail his pursuits.  ER355-56 at ¶¶ 11-12.

The lease decision from the Butte FO includes leases in Broadwater, Lewis and Clark, Park, and Gallatin Counties.  FASER 27-28.  Mr. Gilbert hunts, fishes, and canoes on and adjacent to leased parcels in these counties, and his enjoyment of and interests in these areas will be impaired by lease development.  ER352-53, 355-56 at ¶¶ 4-6, 11-12.  George Wuerthner (WildEarth Guardians member) recreates in and photographs the landscapes where multiple leases are located in these counties, and oil and gas development on the leased parcels will harm his personal and professional interests in these areas.  ER376-87 at ¶¶ 10-11, 15-20.

The Dillon FO leased various parcels in southern Beaverhead County.  FASER 53.  Mssrs. Gilbert and Wuerthner regularly hike in and photograph the "beautiful landscape" of the Lima Peaks in southwestern Montana where these leases are located.  ER352 at ¶ 3; ER387-88 at ¶ 21.  Development of these leases will directly harm their recreational, aesthetic, and professional interests in these areas.  ER352, 356 at ¶¶ 3, 12; ER387-89 at ¶¶ 21, 23.

The lease decision from the Lewistown FO included parcels in Fergus County.  FASER 83.  Mr. Gilbert hunts, fishes, or canoes near leased parcels in

Fergus County, and oil and gas development on these leases will cause him to stop recreating in this the lease areas. ER355-56 at ¶ 11.

The Malta FO leased parcels in Phillips County. FASER 94-95. Mr. Gilbert hunts, fishes, or canoes near these leased parcels, and his enjoyment of these activities would be diminished by development of the challenged leases. ER355-56 at ¶ 11.

The Miles City FO issued new leases and lifted suspensions on leases in Powder River, Dawson, Sheridan, Fallon, Richland, and Roosevelt Counties. FASER 106; ASER 029-30. Steve Gilbert drives along,[21] and hunts, hikes, and fishes adjacent to leased parcels in Powder River County, Dawson County, and Sheridan County, and lease development will diminish his enjoyment of these areas. ER353-56 at ¶¶ 7-9, 11. George Wuerthner travels in and photographs the areas of proposed leases in Roosevelt, Richland, and Sheridan Counties, and development of these leased parcels will significantly impair his enjoyment of these areas. ER377-78, 383, 388 at ¶¶ 12, 15, 22; ER379, 381-82 (images). Wade Sikorski (MEIC member) lives and ranches adjacent to leased parcels in Fallon County. ER361 at ¶ 1. Mr. Sikorski is "deeply troubled" that development of the

---

[21]  An interest in an area that one regularly observes while driving and which is threatened by challenged activity is sufficient to establish standing. *E.g.*, *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181-82 (2000); *Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 61 (2d Cir. 1985); *United States v. Metro. St. Louis Sewer Dist.*, 883 F.2d 54, 56 (8th Cir. 1989).

leases will despoil the "vast areas of BLM land in [his] area" and impair "one of the greater joys in my life," which is viewing these undisturbed prairies and badlands.  ER361-62 at ¶¶ 1, 5.

As elaborated in MEIC's opening brief, Mssrs. Gilbert, Wuerthner, and Sikorski (and consequently MEIC) meet the standing requirements to challenge BLM's NEPA violations.  Dkt. 9-1 at 18-21.

### C.    BLM Has Not Attempted to Meet the Heavy Burden of Demonstrating Mootness of Any Aspect of MEIC's Case, Though It Will Be Free to Raise Mootness Arguments on Remand.

BLM's "suggestion" of "partial" mootness should not be considered by this Court, but should be left to the district court to resolve on remand, as BLM requests.  Dkt. 37 at 3-4; Dkt. 36-1 at 21, 25.

Unlike standing, which plaintiff must establish, mootness must be demonstrated by the party asserting mootness.  *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (2000).  The burden of establishing mootness is "heavy," and the standard is particularly "stringent" when the claim of mootness is based on a defendant's voluntary conduct.  *Id.*  Further, unlike standing, multiple exceptions exist to the mootness doctrine.  *Id.* at 190.[22]

---

[22]  BLM's discussion of mootness has no bearing on MEIC's standing, which is established "at the time the complaint was filed."  *Id.* at 184; *see also id.* at 185, 188, 191 (same).

Here, BLM has "suggested" that parts of MEIC's case may have become moot. Dkt. 37 at 1-3; Dkt. 36-1 at 21-24. But the agency has neither attempted to meet nor come close to meeting the "heavy burden" of establishing mootness. BLM has made no attempt to demonstrate that each lease parcel cited by MEIC has been terminated. In fact, the agency admits that MEIC's "standing declarants also claim injury from some leases that remain active." Dkt. 36-1 at 23. BLM expressly asks that this Court not address the issue of mootness, but that it should leave the issue to the district court. Dkt. 36-1 at 23, 25; Dkt. 37 at 3.

In accordance with BLM's request and because BLM has not met the heavy burden of establishing mootness, this Court should not hold that any portion of MEIC's case is moot. As BLM notes, it will remain free to raise any mootness concerns at the district court on remand.

## CONCLUSION

This Court should rule that MEIC has standing to raise all of its NEPA arguments and remand to the district court for resolution of the merits.

Respectfully submitted this 21st day of July 2014,

/s/ Shiloh Hernandez
Shiloh Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
406.204.4861
hernandez@gmail.com

22

Erik Schlenker-Goodrich
Western Environmental Law Center
208 Paseo del Pueblo Sur, Unit 602
Taos, New Mexico 87571
575.613.4197
eriksg@westernlaw.org

Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, Montana 59807
406.549.3895
smcmillan@wildearthguardians.org

23

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2014, I electronically filed the foregoing APPELLANTS' REPLYs BRIEF and APPELLANTS' SUPPLEMENTAL EXCERPTS OF RECORD with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 21, 2014.

/s/ Shiloh Hernandez
Shiloh Hernandez

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 5,749 words.

Dated: July 21, 2014.

/s/ Shiloh Hernandez
Shiloh Hernandez